**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GISSELLE CARDWELL,

Plaintiff,

Case No.: _______________

v.

EXCEL FACILITY SERVICES GROUP, INC.,

Defendant.
_____________________________________/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Gisselle Cardwell files this Complaint against her former employer, Excel Facility Services Group, Inc. ("Excel").

## INTRODUCTION

1. Gisselle was a standout Senior Account Director at Excel. She helped the company grow its United States Postal Service account by roughly 100 facilities. Excel rewarded her with a performance award, bonuses, and a raise, and senior leadership discussed placing her in a long-term regional leadership role.

2. Everything changed after Gisselle announced she was pregnant. Her supervisor began policing short breaks Gisselle needed for morning sickness and fatigue. When Gisselle complained to HR, HR told her she was overreacting because of her pregnancy and "hormones."

3. When Gisselle returned from maternity leave, Excel kept her title and salary on paper but stripped her of her Senior Account Director responsibilities. Her repeated requests to get her job back went nowhere.

4. Roughly two months after returning from maternity leave—and days after Gisselle raised concerns about pumping and transporting breast milk during company travel and escalated her supervisor's mistreatment to senior management—Excel fired her. Excel claimed it was eliminating her position due to a financial reduction in force.

5. That was a lie. On the exact day Excel fired Gisselle, it posted two job openings covering her duties at combined salaries exceeding her own. Excel did not eliminate the need for Gisselle's work. It eliminated Gisselle.

6. This is an action for pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*

**PARTIES**

7. Gisselle Cardwell is a resident of Haines City, Polk County, Florida.

8. Excel Facility Services Group, Inc. is a New Jersey corporation registered to do business in Florida that provides janitorial and facility maintenance services across multiple states, including Florida.

9. At all relevant times, Gisselle was an "employee" and Excel was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) because Gisselle's claims arise under federal law.

11. This Court has personal jurisdiction over Excel because Excel continuously conducts business in Florida, employed Gisselle in Florida, and directed the unlawful employment actions at issue toward her in Florida.

12. Pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391, venue is proper in this District because Gisselle worked for Excel from her home in Polk County, Florida, and the unlawful employment practices occurred in this District.

13. Gisselle timely exhausted her administrative remedies. On March 13, 2024, she filed a Charge of Discrimination against Excel with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 524-2024-01336), alleging sex and pregnancy discrimination and retaliation.

14. On August 17, 2026, the EEOC issued a Determination and Notice of Rights. Gisselle files this Complaint within 90 days of receipt. All conditions precedent to this action have been satisfied or waived.

## GENERAL ALLEGATIONS

15. Excel hired Gisselle on January 25, 2021, as a District Manager overseeing its Boston-area operations. She worked remotely from her home in Florida throughout her employment.

16. Later in 2021, Excel promoted Gisselle to Senior Account Director over its United States Postal Service ("USPS") account.

17. In that role, Gisselle restructured Excel's USPS operations, retrained staff, established professional standards, and helped expand the account by approximately 100 facilities.

18. Gisselle also stepped in to stabilize and staff Excel's Florida region after a local district manager resigned.

19. Excel repeatedly recognized Gisselle's strong performance. In December 2021, she received a Stand Out Performer Award and a bonus. In 2022, Excel raised her salary from $90,000

to $100,000 and gave her a glowing performance review that outlined plans for her to take on a long-term regional leadership role in Florida and the South.

20. On January 17, 2023, Gisselle notified HR representative Yaira Matos that she was pregnant, with an August 17, 2023 due date.

21. During her pregnancy, Gisselle experienced nausea and fatigue that occasionally required brief breaks away from her computer. She informed her supervisor, Astride Raman, of her symptoms and continued working after hours to ensure all of her duties were completed.

22. Despite Excel's written policy allowing exempt employees to flex their schedules by an hour without using paid time off, Ms. Raman scrutinized Gisselle's brief pregnancy-related breaks and forced her to log paid leave.

23. Meanwhile, Excel allowed a male manager, Jose Carrero, to adjust his schedule to attend school and take sick time without using accrued paid leave.

24. On April 26, 2023, Gisselle submitted a written complaint to Ms. Matos in HR detailing Ms. Raman's hostility toward her pregnancy-related breaks and the resulting stress on her pregnancy. When Gisselle also pointed out the disparate treatment compared to Mr. Carrero, Ms. Matos brushed it off, stating Mr. Carrero was permitted to "organize his hours."

25. During the ensuing HR meeting, Ms. Matos told Gisselle that she was overreacting and blamed Gisselle's reaction on her pregnancy and "hormones."

26. In June 2023, during another dispute over pregnancy-related breaks, Gisselle reminded Ms. Raman that federal law protects pregnant employees. Later in her pregnancy, Gisselle submitted medical documentation from her obstetrician supporting her need for brief breaks.

27. Gisselle began maternity leave in August 2023 and gave birth on August 13, 2023.

28. When Gisselle returned to work on November 6, 2023, Excel kept her title and salary intact on paper, but stripped her of her core Senior Account Director duties and relegated her to lower-level manager tasks reporting to Ms. Raman.

29. On December 12, 2023, Gisselle asked Ms. Raman to restore her normal responsibilities. Ms. Raman deferred to HR.

30. On December 18, 2023, Gisselle met with Ms. Matos, who confirmed that Gisselle's duties had been given away and promised to provide a new written job description. Excel never provided one.

31. Gisselle complained to HR and Vice President Gumersindo Rivera about Ms. Raman's ongoing mistreatment and the stripping of her duties. Excel refused to restore her role, excluded her from the December 2023 management dinner, and denied her the year-end bonus she had earned in prior years.

32. In early January 2024, Ms. Raman ordered Gisselle to modify her remote schedule and begin traveling across Excel's Florida facilities.

33. Because Gisselle was breastfeeding her infant, she explained that she needed accommodations and equipment to pump and safely transport breast milk while traveling, and raised safety concerns regarding severe weather.

34. Ms. Raman escalated the travel issue to Mr. Rivera. Gisselle then contacted HR and Mr. Rivera to report Ms. Raman's continued mistreatment regarding her pregnancy, return from leave, and lactation needs, and asked to be reassigned to a different supervisor.

35. Days later, on January 12, 2024, Excel fired Gisselle.

36. Excel's termination letter praised Gisselle's "hard work, dedication, skills, and contributions," but claimed her Senior Account Director position was being eliminated as part of a company-wide reduction in force due to financial conditions.

37. Upon information and belief, Excel did not fire anyone else in this purported January 2024 reduction in force.

38. On the exact day it fired Gisselle, Excel opened two job requisitions covering the work Gisselle had performed, at combined salaries higher than what Excel paid her.

**COUNT I – VIOLATION OF TITLE VII (PREGNANCY DISCRIMINATION)**

39. Plaintiff repeats and realleges Paragraphs 1 through 38 as if fully set forth herein.

40. Title VII, as amended by the Pregnancy Discrimination Act, prohibits employers from discriminating against employees on the basis of sex, which includes pregnancy, childbirth, and related medical conditions. 42 U.S.C. §§ 2000e(k), 2000e-2(a).

41. Defendant discriminated against Plaintiff because of her pregnancy, childbirth, and related medical conditions by stripping her of her Senior Account Director duties upon her return from maternity leave and terminating her employment.

42. Plaintiff's pregnancy, childbirth, and related medical conditions were motivating factors in—and the but-for cause of—Defendant's adverse employment actions.

43. Defendant's claimed reduction in force was a pretext for unlawful discrimination.

44. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights. Defendant's management and HR personnel directly participated in and approved the discriminatory conduct, dismissed her complaints as hormonal overreactions, and fabricated a sham reduction in force to fire her.

45. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages and benefits, emotional distress, humiliation, and loss of dignity.

46. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs to the fullest extent permitted by Title VII.

**COUNT II – VIOLATION OF TITLE VII (RETALIATION)**

47. Plaintiff repeats and realleges Paragraphs 1 through 38 as if fully set forth herein.

48. Plaintiff engaged in protected activity under Title VII when she repeatedly complained to Defendant's HR department and senior management about pregnancy discrimination, disparate treatment in scheduling and breaks, the stripping of her job duties after maternity leave, and mistreatment regarding her post-partum lactation needs.

49. Immediately after Plaintiff escalated her complaints to HR and Vice President Rivera in January 2024, Defendant terminated her employment under the guise of a one-person reduction in force.

50. But for Plaintiff's protected activity, Defendant would not have terminated her employment.

51. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights. Defendant's management and HR agents knowingly participated in and approved the retaliation against Plaintiff.

52. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages and benefits, emotional distress, humiliation, and loss of dignity.

53. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs to the fullest extent permitted by Title VII.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests the Court enter judgment in her favor as follows:

a. Back and front pay (and lost benefits) resulting from Defendant's violations of Title VII to the fullest extent permitted by law;

b. Compensatory damages resulting from Defendant's violations of Title VII to the fullest extent permitted by law;

c. Punitive damages to punish Defendant's violations of Title VII to the fullest extent permitted by law;

d. Pre-judgment and post-judgment interest;

e. An award of costs and reasonable attorneys' fees; and

f. Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims.

Dated: November 9, 2026

Respectfully submitted,

By: /s/ Jonathan E. Pollard

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**LEAD COUNSEL**

Pollard PLLC
500 E. Broward Blvd., #950
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*